McILWAIN, LLC
TIMOTHY J. McILWAIN, Esq.
NJ Attorney ID #010471996
2020 New Road, 2ND Floor
Linwood, New Jersey 08221
Tel: (877) 375-9599
Fax: (609) 450-7017
www.McIlwainLaw.com

Attorneys for Plaintiff, DAVID E. GABROS M.D.

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY
### CAMDEN VICINAGE

| | |
|---|---|
| DAVID E. GABROS, M.D., | Case No.:1:16-cv-6135-NLH-JS |
| *Plaintiff,* | |
| | CIVIL ACTION |
| Vs. | |
| | **FIRST AMENDED COMPLAINT AND** |
| SHORE MEDICAL CENTER, Scott | **JURY DEMAND** |
| Strenger,M.D., Jeanne | |
| Rowe,M.D., Peter | |
| Jungblut,M.D., Genesis | |
| HealthCare d/b/a Linwood Care | |
| Center | |
| *Defendants.* | |

The plaintiff, David E. Gabros, M.D., residing in Galloway, Atlantic County, New Jersey, with offices located at 217 34th Street, Brigantine, Atlantic County, New Jersey 08203, by way of Complaint hereby states the following antitrust, discrimination, unfair competition, and related claims against Defendants:

**NATURE OF ACTION**

1.      This action arises out of the Defendants' ongoing discriminatory, anticompetitive, and/or illegal *per se* conduct, and in violation of Section 1 and 2 of the Sherman Act; 42 U.S.C. § 1981, *et seq.* in violation of equal protection under the law; in violation of Section 43(a) of the Lanham Act; in violation of the New Jersey Antitrust Act, N.J.S.A. 56:9-1 *et seq.*; in violation of constitutional rights as provided under 42 U.S.C. § 1983; and including breach of contract, tortious interference with contract and business, business disparagement, and other wrongful conduct; all arising out of concerted actions by and between the defendants resulting in an unreasonable restraint of trade and other anticompetitive and other illegal acts, thus damaging the plaintiff and the general public.

2.   On May 19, 2015, SMC's Appellate Review Committee ratified the discriminatory conduct or omissions of SMC's disparate treatment of similarly situated non-middle eastern doctors regarding handwriting deficiencies, destroyed video evidence and character witnesses from a Christian Church.

**JURISDICTION**

2

3.   Federal jurisdiction is established pursuant to
Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 & 2, which
confers exclusive federal jurisdiction over antitrust claims as
stated herein and which permits a private party to institute an
action seeking damages for Sherman Act violations pursuant to 15
U.S.C. § 15("[a] person who shall be injured in his business or
property by reason of anything forbidden in the antitrust laws
may sue therefore in any district court of the United States...
and shall recover threefold the damages by him sustained").

4.   Federal jurisdiction is also established under 15
U.S.C. § 26 ("[a] person... shall be entitled to sue for and
have injunctive relief... against threatened loss or damage by a
violation of the antitrust laws").

5.   Federal jurisdiction is also established under 42
U.S.C. §§ 1981, *et seq.* for violations of civil rights for
discrimination based on "Egyptian" or "Middle Eastern" ethnic
origin; and 28 U.S.C. Section 1343(a)(3), for violations of
plaintiff's substantive rights under the Fourteenth Amendments
of the United States Constitution.

6.   Federal jurisdiction is also established under the
Lanham Act for violations pursuant to 15 U.S.C. § 1125(a)
(liability for use in commerce by Defendants of "false or
misleading description of fact, or false or misleading

3

representation of fact, which – (B)... misrepresents the qualities of... another person's goods, services, or commercial activities shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.")

7.   Subject matter jurisdiction is established over Plaintiff's federal antitrust and unfair competition claims under the Sherman Act and the Lanham Act pursuant to 28 U.S.C. §§ 1331 and 1337.

a. Upon information and belief, Subject matter jurisdiction is established through SMC's publication of false, defamatory and libelous statement(s) in the National Practitioner's Data Bank via U.S. Mail.

8.   Pendent jurisdiction over Plaintiff's additional state claims for violation of the NJLAD, breach of contract and tortious interference with contract and business exists and is established under 28 U.S.C. § 1367.

**<u>VENUE</u>**

9.   Venue is properly laid with this Court pursuant to 28 U.S.C. Section 1391(b), as amended by Section 311 of the judicial Improvement Act of 1990, based upon the following: (i) all Defendants reside in this district and/or transact their

4

affairs in this district and/or conduct a substantial amount of business in this district; and, (ii) all or a substantial part of the actions, events, or omissions giving rise to the claims herein occurred in this district.

## THE PARTIES

10.  Plaintiff David E. Gabros, M.D. is an Egyptian-American (of Egyptian/Middle Eastern ancestry) and a citizen of the United States and a resident of Galloway, Atlantic County, New Jersey, with offices located in Brigantine, Atlantic County, New Jersey, as set forth above.

11.  Dr. Gabros obtained his medical degree from the University of Assiut Faculty of Medicine in Assiut, Egypt, completed an internal medicine residency at Atlantic City Medical Center, and received board certification in Internal Medicine by the American Board of Internal Medicine.

12.  In 1998, and again in 2013, Dr. Gabros became Board Certified by The American Board of Internal Medicine, which will be recognized by the medical community until 2023.

13.  Dr. Gabros opened a medical practice in New Jersey specializing in Internal Medicine, and was granted attending staff privileges for internal medicine at Defendant Shore Medical Center and Linwood Care Center.  He applied for and renewed his privileges at SMC and LCC every two (2) years.

5

14.   Defendant Shore Medical Center (SMC), formerly Shore Memorial Hospital, located at 1 E New York Ave, Somers Point, New Jersey 08244 is an entity formed and authorized under the laws of the state of New Jersey and operates a full-service acute care hospital serving the Somers Point, New Jersey community-at-large including Cape May County and the southern parts of Atlantic County SMC has dominant market power in its geographical area including the market for general and internal medicine, emergency care, and inpatient care.

15.   Defendant SMC has more than 380 medical staff and over 1,600 employees.  Annually, approximately 10,000 patients are admitted to SMC and 6,000 surgeries are performed.  SMC's Emergency Department treats approximately 50,000 patients annually, SMC recently completed a 138,000 sq. ft. surgical pavilion including a state-of-the-art suite for invasive procedures such as cardiac catheterizations, endovascular interventions, and wound care  SMC's revenue last year was in excess of One Hundred Million Dollars ($100,000,000.)

16.   Defendant SMC secured a $495,000 grant from the Health Resources and Services Administration for the construction of the $125 million surgical pavilion and campus expansion.

17.   Defendant SMC also received more than $1 million in federal funding in 2012.

18.   Defendant Scott Strenger, M.D., is a medical doctor licensed by the state of New Jersey.  At all relevant times herein, he is the President of the medical executive at SMC, is in private practice and is and/or was, on information and belief, an employee of SMC.

19.   Defendant Jeanne M. Rowe, M.D., is a medical doctor licensed by the state of New Jersey.  At all relevant times herein, she is the current Chief Medical Officer at SMC, is in private practice and is and/or was, on information and belief, an employee of SMC.

20.   Defendant Peter Jungblut, M.D., is a medical doctor licensed by the state of New Jersey.  At all relevant times herein, he was the former Vice-President of Medical Affairs is in private practice and is and/or was, on information and belief, an employee of SMC.

21.   Defendant Genesis HealthCare with its principle place of business at 101 East State Street in Kennett Square, Pennsylvania 19348 and is authorized under the laws of the state of New Jersey to do business as Linwood Care Center (LCC), located at New Road and Central Avenue, Linwood, New Jersey 08221, which essentially operates a full-service Shortstay and Longterm care service with Assisted/Senior Living service.

## OPERATIVE FACTS FOR THE CLAIMS AGAINST DEFENDANTS SMC, STRENGER, ROWE & JUNGBLUT

22.  Dr. Gabros applied for and received clinical privileges at Defendant SMC in 1997.

23.  Dr. Gabros' hospital practice is located solely at SMC.

24.  Dr. Gabros' clinical privileges at SMC were subject to reapplication and renewal by the Board every two (2) years. From 1997, Dr. Gabros' clinical privileges were approved every two (2) years.

25.  Dr. Gabros was granted approximately four (4) limited reappointments since 2009.

26.  On or about February 18, 2013 Dr. Gabros requested that his status be changed from "Active Staff" to "Referral Staff".

27.  On or about February 19, 2013, the Medical Executive Committee ("MEC") considered Dr. Gabros' request for a change of status and recommended to SMC's Board that this change in status be approved.

   a. SMC's Board approved Plaintiff's change in status from Active Staff privileges to "Referral Staff" effective April 1, 2013.

28.  On or about February 21, 2013 Jeanne Rowe, M.D., Chief Medical Officer of SMC wrote a letter to Dr. Gabros explaining the MEC's recommendation to approve Dr. Gabros change in status request and explained that the SMC's Board would provide Dr. Gabros with their decision after its meeting scheduled for early March 2013.

29.  On or about March 25, 2013, Plaintiff was suspended from the exercise of his clinical privileges at SMC effective immediately due to the allegation that Plaintiff committed "a crime" in SMC's outdoor physician parking lot on March 24, 2013.

a. The term, "Crime," has a specific definition at law in the State of New Jersey and is defined, pursuant to *N.J.S.A.* 2C:1-4(b), as follows (emphasis added):

An offense is a disorderly persons offense if it is so designated in this code or in a statute other than this code. An offense is a petty disorderly persons offense if it is so designated in this code or in a statute other than this code. Disorderly persons offenses and petty disorderly persons offenses are petty offenses and are not crimes within the meaning of the Constitution of this State. There shall be no right to indictment by a

grand jury nor any right to trial by jury on such offenses. Conviction of such offenses shall not give rise to any disability or legal disadvantage based on conviction of a crime.

b. Based on the assertion of alleged misconduct in SMC's outdoor physician parking lot on March 24, 2013, on a Summons executed by Dr. Nachtigall on March 26, 2013, Plaintiff was charged with a sole violation of *N.J.S.A.* 2C:17-3(a)(1), (Criminal Mischief), which, for gradation purposes pursuant to *N.J.S.A.* 2C:17-3(b)(2), is a Disorderly Persons Offense.

c. At all relevant times hereto, immediately following the execution of the Summons by Dr. Nachtigall, SMC was aware that Plaintiff was not charged with "a crime" but rather a "disorderly persons offense." SMC willfully, intentionally, knowingly, and otherwise with reckless disregard for the truth, falsely claimed that Plaintiff was charged with a crime when, in fact, he was charged by Dr. Nachtigall with having committed a disorderly persons offense.

d. SMC continued to assert Plaintiff was alleged to
   have committed "a crime" even when provided with
   absolute proof that Plaintiff was only alleged to
   have committed a disorderly persons offense.

30.    Plaintiff Dr. Gabros was found not guilty and the charges were dismissed in municipal court.

31.    On March 26, 2013, Plaintiff requested the preservation of all video of the tire slashing event on March 24, 2013 from 12:00 a.m. to 11:59 p.m. for each and every camera in and surrounding the parking area.

32.    Defendant's counsel was placed on notice that the preservation of the parking area video was imperative and its absence would have an adverse impact on all proceedings forward.

33.    Defendant Shore Medical Center intentionally withheld, altered or otherwise destroyed material evidence with the purpose to disrupt both criminal and civil litigation involving Plaintiff including the MEC hearing outcome.

34.    Plaintiff incurred unnecessary litigation expenses that would or otherwise reasonably could have been avoided but for the Defendant Shore Medical Center destruction of evidence.

35.    The evidence in question could not have been reasonably obtained from another source, and Defendant Shore Medical Center deprived Plaintiff the ability to defend his hospital privileges at the MEC and his ability to prosecute Plaintiff's civil cause of action.

12

36.   On May 19, 2015, SMC's Appellate Review Committee permanently suspended Dr. Gabros's hospital privileges despite the admission by Defendant's counsel that they destroyed video evidence after Plaintiff warned that the destruction of any video evidence may have collateral consequences on any party involved.

37.   SMC's Appellate Review Committee permanently suspended Dr. Gabros's hospital privileges and ratified discriminatory conduct or omissions of Defendant SMC's disparate treatment of similarly situated non-middle eastern doctors regarding handwriting deficiencies, and character witnesses from a Christian Church.

38.   Prior to his suspension, Dr. Gabros' track record of patient care was unblemished.  He was and is highly qualified to practice, including at SMC, and has and continues to meet all objective criteria for a medical professional with his specialties.

39.   Prior to Dr. Gabros' suspension, Dr. Gabros had a competitive relationship with other doctors who had privileges at SMC.

40.   Upon information and belief, the relationship was hostile because, *inter alia,* of a dislike of Dr. Gabros based on his ethnic background of Egyptian (Middle Eastern) ancestry as

an Egyptian-American and disparate treatment of Dr. Gabros compared to similarly situated doctors.

41.   Plaintiff's personnel record maintained at SMC was filled with irregularities, misrepresentations, inconsistencies, and inconsistent application of policy that were discriminatory, anti-competitive, ethnically biased, and illegal, all to the detriment of Plaintiff

a. Plaintiff was a physician with admitting privileges in SMC, placing him in competition with other service providers employed by SMC.

b. Upon information and belief, SMC has attempted and continues to attempt the vertical integration of medical services whereby independent physicians such as Plaintiff are in competition with SMC's goals of monopolizing medical services in the Region. SMC has conducted a course of action and business whereby it has attempted to purchase the practices of independent physicians and then subsequently employs those physicians as medical providers with SMC whereby SMC would retain all proceeds related to patient care and would require the employee physicians to direct patients solely to other SMC employee healthcare providers. Plaintiff, an

14

independent physician and specialist in internal
medicine, was subjected to standards and criteria
otherwise not applied to or imposed upon physicians
who were employed by SMC or who had contracted for
services with SMC. All such acts referenced herein
were for the purpose of establishing a monopoly in
violation of the Sherman Act referenced herein.

42.   The Fair Hearing required that a panel of not less
than three (3) physicians who cannot be "in direct economic
competition with the affected person" conduct a review of the
denial of Dr. Gabros request for reinstatement.  (Shore Memorial
Hospital, Medical Staff Bylaws and Procedural Manuals, 2006
Bylaws, Part III, Hearing and Appeal Policy and Process, Section
2.1, Hearing Panel).

43.   The Panel determination and subsequent ratification by
the Medical Executive Committee ("MEC") as against Plaintiff was
arbitrary and capricious, such ratification resulting in
Plaintiff's precautionary suspension, suspension of clinical
privileges ("Active Staff" and "Admitting Privileges") and
removal from the staff, terminating Plaintiff's Referral Staff
membership. Moreover, the aforementioned actions by the MEC were
discriminatory, anti-competitive, ethnically biased, and
illegal, all to the detriment of Plaintiff.

44.  As before, the Fair Hearing, as per the Bylaws, required that a panel of not less than three (3) physicians who cannot be "in direct economic competition with the affected person" conduct a review of the suspension and removal of Plaintiff's from "Active Staff" and subsequently "Referral Staff."

   a. Upon information and belief, Dr. Nachtigall, the signer of the Summons as against Plaintiff, was present at the time the vote was taken by the Medical Executive Committee ("MEC") to summarily suspend Plaintiff. Further, the attorney providing advice to the MEC as to the precautionary suspension later acted in the role of prosecutor in Plaintiff's Fair Hearing.

45.  The actions of the Defendants after the entry of the March 25, 2013 letter demonstrate collusion and conspiracy to unlawfully and wrongfully prevent Dr. Gabros from retaining his remaining privileges for anti-competitive, discriminatory, and otherwise improper purposes.

46.  This failure and refusal to act in accordance with the bylaws and applicable law was based on Defendants' intention to prevent Plaintiff from obtaining his remaining privileges, which deprive Plaintiff of the right to provide such services in the

relevant market, and otherwise taint Plaintiff in the mandatory reporting of the precautionary suspension and subsequent removal to the New Jersey Board of Medical Examiners and the National Practitioner's Data Bank.

47.  This failure to comply and refusal to cooperate was caused and/or contributed to by the Defendants' discriminatory practices and ethnic bias against persons of Middle Eastern descent.

48.  As a result of Defendants' actions, collusion, and conspiracy, SMC has wrongfully failed and refused to reinstate Plaintiff's clinical privileges and Referral status. The anti-competitive, predatory, and discriminatory actions of Defendants have prevented Plaintiff from providing services, have caused economic harm, and have improperly tainted Plaintiff as a physician who was suspended and removed from staff at SMC.

49.  SMC and the other Defendants have also colluded and contemporaneously undertaken an unsubstantiated, malicious, and bad faith campaign to discredit Dr. Gabros, destroy his reputation, and drive him out of business.

50.  On or about March 25, 2013 Defendant SMC summarily suspended Dr. Gabros' privileges.  This suspension was solely based on the Defendants' anticompetitive and discriminatory motives and desire to eliminate Dr. Gabros' ability to compete

with the Defendants for patients by accusing him of criminal misconduct, and driving him out of business, and for no legitimate reason or purpose.

51.   Disruption of treatment of Dr. Gabros' patients could only result in a delay or improper care, or lack of care, seriously impacting the patient's condition, potentially resulting in the death and/or serious injury to the patient. Thus, this suspension was a direct and intentional action to interfere with the doctor- patient relationship, much to the detriment of the patients, the public, and Dr. Gabros.

52.   Federal policy specifically provides that summary suspensions of a physician's hospital privileges shall be limited to "where the failure to take such an action may result in an *imminent danger to the health of any individual*." 42 U.S.C. § 11112(c)(2) (emphasis added).   Defendant SMC did not cite any "imminent danger to the health of any individual" as a basis for the summary suspension of Dr. Gabros, and there was no such basis.

53.   There was no reasonable belief by Defendants when Dr. Gabros was suspended, or evaluation regarding whether the action was warranted by the facts known, and in fact it was not so warranted after a reasonable effort evaluation of the facts. Dr. Gabros was being suspended for the belief that he committed

a crime in SMC's outdoor physician parking lot on Sunday, March 24, 2013.

54.   SMC's precautionary suspension of Dr. Gabros' privileges compromised the care of Dr. Gabros' patients.  It violated the SMC Bylaws, deprived Dr. Gabros of due process, constituted bad faith and unfair dealing, and constituted a breach of the covenant implied by law that parties shall deal with each other fairly and in good faith.

55.   The suspension was also based on ethnic bias and was designed to harass Dr. Garbos.  That the suspension was deliberately discriminatory, malicious, arbitrary, in bad faith, and designed to harass and embarrass Dr. Gabros was confirmed by SMC's announcement in a letter circulated to the entire hospital staff that Dr. Gabros was suspended and would not be allowed on the property.  Various staff members expressed shock to Dr. Gabros that SMC would circulate such a letter, because they had never seen this done before.

56.   In addition to the public announcement of his sanctions, the entire SMC staff was directed to call the police if Dr. Gabros appeared on site, and was told that he was to be escorted off the property by the police.  He was forbidden to inquire about the well-being of his patients.

57.  Defendants' improper actions by an unsupported attack on Dr. Gabros' professional competency, even though the suspension was allegedly due to the belief that Dr. Gabros' committed a "crime" in SMC's outdoor physician parking lot on Sunday, March 24, 2013, without any question ever having been raised previously regarding Dr. Gabros professional competency.

58.  In addition to the false allegation that "a crime" was committed, Defendant's March 25, 2013 letter constituted a false or misleading representation of fact, which misrepresented the quality of Dr. Gabros' integrity and reputation and implied that Dr. Gabros was mentally or behaviorally incompetent.

59.  Defendant's statements were a wrongful, malicious, discriminatory and willful mischaracterization of Dr. Gabros and his services and were without any basis whatsoever, as there is no basis for any question of Dr. Gabros' professional competency, and no basis was ever explained or asserted in the letter.

60.  Defendants' public announcement of Dr. Gabros' suspension and the instruction that he was to be escorted off the property by the police further mischaracterized his services and subjected him to public scorn and humiliation.

61.  All of the Defendants' enumerated actions were undertaken in bad faith, maliciously, with discriminatory,

anticompetitive and unlawful intent, and were not taken with the reasonable belief that they were in furtherance of providing quality health care.

62. Defendants' actions were unlawful and illegal *per se* and were not based on a reasonable effort to obtain the facts of the matter.

63. Defendants' actions were not undertaken with the reasonable belief that their actions were warranted by the facts known.

64. Defendants also failed to make a reasonable effort to obtain the facts and further failed to satisfy the applicable notice and hearing requirements.

　　　　a. Plaintiff timely demanded the preservation of video evidence intended to be used to exculpate him from the allegations of wrongdoing in the physician parking lot. Such video evidence was alleged by SMC to be destroyed or otherwise "unavailable" without explanation or justification.

65. The actions of SMC, including the MEC, were not warranted based on the facts known, and the discipline imposed did not comport with due process.

66.   There were numerous flaws and deficiencies in the application of the Bylaws which violated both the Bylaws and the minimum standards of due process.

## OPERATIVE FACTS FOR THE CLAIMS AGAINST DEFENDANT GENESIS HEALTHCARE d/b/a Linwood Care Center

67.   Disruption of treatment of Dr. Gabros' patients could only result in a delay or improper care, or lack of care, seriously impacting the patient's condition, potentially resulting in the death and/or serious injury to the patient.  Thus, this suspension was a direct and intentional action to interfere with the doctor- patient relationship, much to the detriment of the patients, the public, and Dr. Gabros.

68.   There was no reasonable belief by Defendants when Dr. Gabros was suspended regarding whether the action was warranted by the facts known, and in fact it was not so warranted after a reasonable effort evaluation of the facts.  Dr. Gabros was being suspended for the belief that he committed a crime in LCC's outdoor physician parking lot on Sunday, March 24, 2013.

69.   LCC's suspension of Dr. Gabros' privileges compromised the care of Dr. Gabros' patients.  It constituted bad faith and unfair dealing, and constituted a breach of

the covenant implied by law that parties shall deal with each other fairly and in good faith.

70. Defendant's actions prevented Dr. Gabros without any basis whatsoever, as there is no basis for any question of Dr. Gabros' professional competency, and no basis was ever explained or asserted in writing.

71. All of the Defendants' enumerated actions were undertaken in bad faith and breached its contractual relations with Dr. Gabros who is unable to treat his patients at LCC's facility.

72. Defendant Linwood Care Center gave no explanation about why Dr. Gabros was removed from the facility;

73. Defendant Linwood Care Center gave no written (i.e. letter, email or otherwise) explaining why Dr. Gabros' services were no longer welcome at the Linwood Care Center despite having a number of patients that attend Linwood Care Center;

74. There was no reason given for Dr. Gabros removal from Linwood Care Center;

75. There was no hearing conducted regarding the reasons of Dr. Gabros removal and he was not permitted legal counsel to represent his interests;

76.  Despite being told not to enter the facility and in
     the best interest of the patient, Dr. Gabros went to
     Defendant's facility on one occasion to treat his
     patient and a Linwood Care Center representative
     advised him that they would call the police to remove
     him from the building if he attempted to attend to one
     of his patients;

## COUNT 1
### (Restraint of Trade in Violation of
### Section 1 the Sherman Act)

77.  Plaintiff repeats here the allegations of the previous
     paragraphs as if set forth at length herein.

78.  Defendants herein acted in concert to restrain trade
     by improperly and summarily suspending the hospital
     privileges of the Plaintiff, Dr. Gabros, at SMC.

79.  Defendants conspired with one another, in violation of
     Section 1 of the Sherman Act, to exclude Plaintiff
     from the internal medicine market thereby excluding
     Plaintiff from the market for these critical, advanced
     internist procedures, restricting consumers' choice of
     providers for these procedures, and thus forcing
     consumers to pay higher prices.

80.   Upon information and belief, these efforts were part
      of a conspiracy to monopolize the market and SMC have
      conducted such course of conduct in its attempts to
      monopolize said market.

81.   Defendants acted in concert and adopted
      anticompetitive and illegal *per se* practices and
      policies to exclude Dr. Gabros through the evaluation
      and review of Dr. Gabros' application to reinstate his
      hospital privileges.

82.   Defendants acted in concert to exclude Dr. Gabros and
      thereby restrain trade by refusing to cooperate with
      Dr. Gabros for the purpose of reinstating his full
      hospital privileges; Defendants acted in concert to
      thwart all attempts by Dr. Gabros to rightfully obtain
      his remaining privileges for internal medicine
      procedures and remain on Staff.

83.   Defendants' taking of punitive action against Dr.
      Gabros, without any basis therefore, was unsupported
      and unjustified, and was excessive even under the
      fraudulent and pretextual case that they have
      attempted to build against him.

84.   Defendants conspired to and did refuse to provide a
      legitimate measure for determining those privileges

for which Dr. Gabros was authorized, thereby denying Dr. Gabros his right to compete, violating due process, restricting consumers' choice of providers for the privileges sought, and forcing consumers to utilize services vertically integrated within the SMC system.

85. Defendants' actions in sending Dr. Gabros' patients to other medical care providers was a conspiracy to monopolize the market, and did monopolize the market.

86. Defendants' actions were undertaken with a common design, understanding, and unity of purpose to exclude Plaintiff from the relevant market, thereby constituting an unlawful agreement under Section 1 of the Sherman Act.

87. Defendants' concerted actions produced anticompetitive effects within the SMC community and Southern New Jersey market for the services provided by Dr. Gabros.

88. Defendants' concerted actions reduced the competition for services as provided by Plaintiff.

89. Defendants' concerted actions reduced the availability of greater options for care, including higher quality care of patients.

90.   Defendants' concerted actions had the specific intent to, and did impose an unreasonable restraint on trade that has an anticompetitive and monopolistic effect on the relevant market of the SMC community and the Southern New Jersey market.

91.   Defendants' concerted actions to exclude Plaintiff is a *per se* violation of the antitrust laws because it is plainly anticompetitive; Defendants' actions tend to restrict competition and decrease output with respect to internal medicine services by independent, non-SMC employed physicians.

92.   In the alternative, Defendants' concerted actions are unlawful pursuant to the "rule of reason" by unreasonably excluding competition without any pro-competitive justification for the collusion.

93.   The purpose and effect of the exclusion of Plaintiff from the relevant market is anticompetitive and monopolistic, reducing the availability of physicians for the relevant services and limiting the number of physicians available to patients, thereby injuring consumers of medical care by imposing less efficacious care.

94. Defendants' concerted actions have directly and proximately caused the Plaintiff to lose revenue from the services that he would have provided to patients had he not been excluded and intimidated.

95. Plaintiff has lost market share and patient volume as a direct result of Defendants' ongoing violation of Section 1 of the Sherman Act.

96. This exclusion of Plaintiff from the relevant market has reduced the quality and quantity of services available for patients and reduced the overall output of services for patients in this market.

97. Patients are unlikely to sue for the loss in the quality and quantity of services, and thus there is little to no potential for duplicative recovery or complex apportionment of damages.

98. Plaintiff will continue to suffer injury to his business and property in the future unless such acts and practices by Defendants are terminated.

<u>**COUNT 2**</u>
<u>**(Conspiracy to Monopolize in Violation of**</u>
<u>**Section 2 of the Sherman Act)**</u>

99.  Plaintiff repeats here the allegations of the previous paragraphs as if set forth at length herein.

100. Through the means alleged hereinabove, the Defendants conspired and agreed, with the intent that SMC would monopolize and continued in its attempt to monopolize the internist market identified herein in the relevant geographic market.

101. By keeping Dr. Gabros from obtaining his clinical privileges and Referral Staff privileges as alleged herein, Defendants ensured that only the Defendants and others chosen by Defendants received patients within the Southern New Jersey market.

102. Through this combination and conspiracy, and the overt acts undertaken to keep Dr. Gabros from obtaining his clinical privileges, SMC exhibited the specific intent to monopolize and continued its attempt to monopolize the relevant market.

103. Defendants continue to violate §2 of the Sherman Act, for which Plaintiff is entitled to relief.

## COUNT 3
### (Civil Rights Violation Under 42 U.S.C. § 1981)

104. Plaintiff repeats here the allegations of the previous paragraphs as if set forth at length herein.

105. Dr. Gabros is a citizen of the United States who is an Egyptian-American, and a member of a racial minority group that is commonly perceived as both ethnically and physiognomically distinct.

106. In June 28, 1999, Plaintiff and Defendant SMC had entered into a relationship, to include that:

    a. Plaintiff received the benefit of being able to treat his patients in the SMC and Defendant SMC received the benefit of providing care to the Plaintiff's patients and the public at large.

    b. The relationship of Plaintiff and Defendant SMC was governed by Defendant SMC's Bylaws.

107.   From at least 2012 and continuing to the present date, Defendants, individually and on behalf of Defendant SMC by discrimination based on ethnicity, have deprived and impaired, and continue to deprive and impair Plaintiff of his right to make, perform, and enforce contracts, and his enjoyment of his rights, benefits, privileges, terms, and conditions of their contractual relationship, including, but not limited to

    a. Defendants have refused to reinstate the Plaintiff's clinical privileges, summarily suspended Plaintiff's medical staff privileges, and made misrepresentations as to the quality and caliber of

his medical services, both unfairly and in a manner found to be in violation of Defendant SMC's Bylaws.

b. SMC acted arbitrarily, capriciously, and partially in its failure to provide potentially exculpatory evidence, further creating an environment wherein Plaintiff was denied due process.

108. Defendants acted in a discriminatory manner against Plaintiff, on the basis of his national origin/ethnicity, in performing its medical peer review functions, thereby violating Plaintiff's civil rights under 42 U.S.C. § 1981 as set forth herein.

109. From at least 2012, and continuing to the present date, Defendants have treated Plaintiff differently than non-minority physicians similarly situated, to wit:

a. Defendants have wrongfully accused Plaintiff of criminal misconduct in an unjust effort to ultimately terminate Dr. Gabros' existing privileges.

b. Defendants summarily suspended Plaintiff's clinical privileges via improper application of rules and fundamental concepts of fairness, and in a manner differently than others of non-Middle-Eastern descent.

c. Defendants purposely and maliciously announced
   Plaintiff's suspension to the medical staff and
   patients for the purpose of denigrating and damaging
   Plaintiff's medical practice and standing in the
   community.

d. Defendants announced the referral of Dr. Gabros for
   mental and emotional counseling with no basis
   whatsoever to do so.

e. SMC conducted an ad hoc focused review of Plaintiff
   only, and of Plaintiff's performance, with no
   legitimate basis, thereby treating him differently
   than others similarly situated. SMC further
   subjected Plaintiff to greater scrutiny than SMC
   staff physicians with alleged violations more
   egregious than those alleged as against Plaintiff.

f. SMC suspended and terminated Plaintiff's existing
   privileges, removing him from the medical staff,
   without any appropriate basis therefore.

g. SMC has improperly labeled Plaintiff as mentally
   unstable and deficient.

110. Defendants have discriminated against Plaintiff on the
basis of his national origin/ethnicity, with gross disregard for

Plaintiff's rights, such instances including, but not limited to:

a. Plaintiff, an ethnic minority is the only physician who ever had his suspension announced in a written communication to the staff and others for the purpose of denigrating and publicly humiliating Plaintiff, causing him to be subject to ridicule and scorn, and damaging Plaintiff's medical practice and standing in the community.

b. SMC placed more stringent requirements upon Plaintiff for obtaining and retaining his privileges, requirements for obtaining which were deemed to "*effectively preclude anyone from qualifying.*"

c. SMC allowed other physicians who were non-minority and who were subject to a medical peer review to remain on staff without concerns and/or taking corrective action.

d. Defendants allowed other physicians who were non-minority and who were alleged to have committed wrongful acts to continue their SMC practice and to maintain active privileges at Defendant SMC.

111. It is Plaintiff's belief and understanding that SMC, in defending the denial of reinstatement of Dr. Gabros's clinical privileges and Referral Staff membership, acted with malice and in bad faith.

112. SMC refused to follow the Bylaws regarding Fair Hearing procedures and provide Plaintiff with due process.

113. Defendant SMC collaborated with the other Defendants, and unnamed members of Defendant SMC's medical staff, who were already biased against the Plaintiff, to participate in and conduct review of Plaintiff's patient charts without any basis therefore.

114. Defendants reliance upon internal peer reviewers (*e.g.,* Defendant Nachtigall) in refusing to reinstate Plaintiff's clinical privileges, and/or for imposing the summary suspension of the Plaintiff under the circumstances was a pretext for discrimination; to wit:

> a. Plaintiff is Board-certified in Internal Medicine.
>
> b. Plaintiff sees patients regularly at his medical practice, and provides his services at Defendant SMC.
>
> c. Plaintiff has continued his medical education and training by acquiring much more than the Criteria of the Order required.

        d. None of Plaintiff's cases have ever been questioned for quality assurance indicators.

115. The Defendants have treated Plaintiff in a manner in which Non-Arabic physicians are not treated, and Defendants refuse to recognize their responsibility for attempting to destroy Plaintiff's medical practice and standing in the community.

116. SMC and Linwood Care Center has refused to reinstate Plaintiff's clinical privileges and Referral Staff membership in contravention of its Bylaws.

117. Defendants have purposely and maliciously misused the peer review process to the detriment of Plaintiff.

118. A double standard of medical peer review exists whereby minority physicians are scrutinized more harshly by Defendants, than are non-minority physicians.

119. As a direct and proximate result of the foregoing, Plaintiff has suffered discrimination based on his membership in a group that is commonly perceived to be an ethnic minority because it is ethnically and physiognomically distinct; further, Plaintiff belongs to a protected group, and is qualified as a licensed physician to obtain privileges at Defendant SMC, but Defendants have suspended Plaintiff's clinical privileges,

refused to reinstate them, and have imposed other unwarranted sanctions against Plaintiff.

120. As a direct and proximate result of the foregoing, Defendants have conspired to deprive, have deprived, and continue to deprive Plaintiff of the benefits of his contractual relationship, and of achieving a livelihood as a Doctor of Medicine in the community and elsewhere.

121. As a direct and proximate result of the foregoing, Plaintiff has suffered, and continues to suffer, irreparable injuries related to embarrassment, degradation, humiliation, emotional stresses, pain and mental anguish, injury to professional standing, injury to character and reputation, and losses of income, property, wealth, and has sustained damages and continues to sustain damages.

## COUNT 4
### (Conspiracy to Violate Civil Rights Under 42 U.S.C. § 1985)

122. Plaintiff repeats here the allegations of the previous paragraphs as if set forth at length herein.

123. The acts of the Defendants as aforestated were undertaken as part of a conspiracy for the purpose of unlawfully depriving Dr. Gabros, directly and indirectly, of the equal protection of the law.

124. As a direct and proximate result of the foregoing, Plaintiff has suffered, and continues to suffer, irreparable injuries related to embarrassment, degradation, humiliation, emotional stresses, pain and mental anguish, injury to professional standing, injury to character and reputation, and losses of income, property, wealth, and has sustained damages, and continues to sustain damages.

## COUNT 5
### (Violation of the New Jersey Law Against Discrimination)

125. Plaintiff repeats here the allegations of the previous paragraphs as if set forth at length herein.

126. Plaintiff belongs to a protected class as individuals of Egyptian (Middle Eastern) Ancestry.

127. Defendants, who are primarily non-minority, summarily suspended Plaintiff and have summarily suspended other associates of Middle Eastern ethnicity.  These disparate disciplinary actions were far more severe than SMC's treatment of Caucasian physicians in analogous situations, in violation of the New Jersey Law Against Discrimination ("NJLAD").

128. As a direct and proximate result of the foregoing, Plaintiff has suffered, and continues to suffer, irreparable injuries related to embarrassment, degradation, humiliation, emotional stresses, pain and mental anguish, injury to

professional standing, injury to character and reputation, and losses of income, property, wealth, and has sustained damages and continues to sustain damages.

## COUNT 6
### (Breach of Contract BY Defendant SMC)

129. Plaintiff repeats here the allegations of the previous paragraphs as if set forth at length herein.

130. Medical staff Bylaws constitute a written contract under applicable New Jersey law.

131. Dr. Gabros has been on the medical staff at SMC at all relevant times and was a party the Bylaws (contract) with Defendants.

132. Plaintiff fully performed all of his obligations under the Bylaws and did not breach the Bylaws in any material way.

133. Defendants materially, willfully, and fundamentally breached their contractual obligations under the Bylaws by failing to adhere to the Bylaws for, *inter alia*, fair hearings, summary suspensions, participation of interested parties, appeals, and investigations of Dr. Gabros.

134. SMC's fraudulent, willful, and illegal *per se* failure to reinstate Dr. Gabros's clinical privileges and Referral Staff

membership denied him his rights under the Bylaws to obtain patients and care for those patients, nonetheless the harm Plaintiff suffered to his reputation and standing in the community.

135. Defendants' summary suspension denied Plaintiff his rights under the Bylaws to care for his patients.

136. Defendants knew or should have known that the allegations against Plaintiff made by his competitors and those with ethnic biases, were false, and by wrongfully and in flagrant disregard acting on those allegations, Defendants imposed penalties that were unjustified and unsupported, and were far harsher than what may have been appropriate or justified.  In so doing, Defendants violated their implied covenant of good faith and fair dealing under New Jersey common law for a contract, and expressly violated the plain language of the contract.

137. Defendants are obligated to honor the Bylaws in full, and the Bylaws vest Plaintiff with enforceable rights with respect to a breach by SMC and/or the other Defendants.

138. As described above, the actions of the Defendants were contrary to the Bylaws, and breached the Bylaws.

139. Defendants' actions proximately caused injury in the form of lost revenue and harm to Plaintiff.

## COUNT 7

### (Unfair Competition, Lanham Act, Section 43(a))

140. Plaintiff repeats here the allegations of the previous paragraphs as if set forth at length herein.

141. Dr. Gabros has provided his medical services since 1989 and the goodwill, and business reputation associated with his services are of great and significant value.  His medical services have become associated in the public mind with medical services of the very highest quality and reputation. This information was testified to in Plaintiff's Fair Hearing, though such testimony was wholly disregarded without explanation.

142. Defendant's March 25, 2013 letter constituted a false or misleading representation of fact, misrepresenting the quality of Dr. Gabros' services when he stated that Dr. Gabros was being referred to the Professional Assistance Program of New Jersey for a mental and behavioral health examination to determine fitness for practice.

143. Defendant's misrepresentations regarding Plaintiff's need for referral constitutes false representation regarding the quality of Plaintiff's services and disparages them, and that the act alleged was "a crime, all of which defames Plaintiff.

144. Defendant's statements were wrongful, malicious, discriminatory, and a willful mischaracterization of Dr. Gabros' services and were without any basis whatsoever.

145. Defendants' public announcement regarding Dr. Gabros' suspension and instruction that he was to be escorted off the property by the police mischaracterized his services, and constituted a false or misleading representation of fact, misrepresenting the quality of Dr. Gabros' services and subject him to public scorn and humiliation.  Such actions were without any basis whatsoever, and disparage Plaintiff's services and defame him.

146. Defendants have made false and defamatory comments to the patients and staff about the quality of the services being offered by Dr. Gabros.  Accordingly, Defendants have used in commerce false and misleading descriptions of fact in commercial representations and have misrepresented the characteristics and qualities of Dr. Gabros' services and commercial activities. These actions of Defendants have caused mistake by, or deceived the public, as to the nature of Plaintiff's services, and constitute misrepresentation regarding the quality of Dr. Gabros' services and unfair competition.

147. These misrepresentations are likely to influence patients and referral physicians with regard to selection medical services such as those provided by Dr. Gabros.

148. Such disparagement of Dr. Gabros' services has caused, and is likely to continue to cause, mistakes or to deceive the relevant public and trade.

149. Defendants' statements were deliberately made with knowledge of Dr. Gabros' rights in his services, and the valuable good will and business reputation associated therewith, with intent to mislead and deceive the public into believing that Dr. Gabros' services were in some way compromised or inferior in quality.

150. Defendants have deliberately and willfully undertaken these actions in order to deceive patients and discredit the reputation and good will of Dr. Gabros.

151. Defendants knew, or reasonably should have known, that their wrongful statements and actions constituted untrue and misleading public statements.  By reason of the foregoing, Defendants have violated and will continue to violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

152. Unless restrained by the Court, Defendants wrongful acts will cause additional serious and irreparable damage to Plaintiff for which he has no adequate remedy at law.

153. Plaintiff has been damaged by the actions of the Defendants, and has had his reputation irreparably harmed by the Defendants' conduct.

154. Defendants' actions proximately caused injury in the form of lost revenue and reputational harm to Plaintiff.

## COUNT 8
### (Tortious Interference with Business Relations and Prospective Economic Advantage)

155. Plaintiff repeats here the allegations of the previous paragraphs as if set forth at length herein.

156. Defendants tortuously interfered with Plaintiff's business relations and prospective economic advantage without excuse or justification but for the intent to harm Plaintiff.

157. Defendants' conduct resulted from actual malice and/or wanton and reckless disregard of Plaintiff's rights.

158. As result of Defendants' conduct in interfering with Plaintiff's business as aforestated, Plaintiff's income is reduced thereby.

159. As a direct and proximate result of Defendants' conduct, Plaintiff was injured and suffered damages.

## COUNT 9
### (Violation of Constitutional Due Process Rights)

160. Plaintiff repeats here the allegations of the previous paragraphs as if set forth at length herein.

161. Defendants' summary suspension of Plaintiff was in violation of the express federal minimum standard for summary suspensions, as set forth in the Health Care Quality Improvement Act ("HCQIA").  This summary suspension was not based on legitimate peer reviews.

162. Defendants' actions did not comply with the immunity provisions of HCQIA.

163. SMC and Linwood Care Center provided no explanation, clarification, and/or justification regarding their failure to adhere to the express requirements of the Bylaws for a Fair Hearing and the providing of due process to Plaintiff.

164. Defendants provided no explanation, clarification and/or justification regarding their failure to adhere to the express requirements of the Bylaws with respect to investigations regarding staff doctors, instead substituting an *ad hoc* committee that was not authorized by the Bylaws or agreed to by Dr. Gabros, and refusing to provide Fair Hearings for the restriction of Dr. Gabros' existing privileges.

165. Defendants' actions proximately caused injury in the form of lost revenue and reputational harm to Plaintiff.

## COUNT 10

166. Plaintiff repeats and reincorporates each allegation heretofore alleged.

167. Since September 30, 2015 to present, the Defendants, their agents and/or employees' continue to issue and publicized false statements to patients and the public at large regarding the quality of services being offered by Dr. Gabros and his practice with full knowledge that the statements were false.

168. That Defendants, their agents and/or employees knew or with reckless disregard for the truth should have known that it had no right to issue false statements to patients and the public at large when in fact no such conduct had occurred.

169. That all of the publications by the Defendants regarding the conduct of Dr. Gabros since his suspension contained false statements, and Defendants and/or their agents and employees knew that these publications contained such false statements.

170.    That Defendants, their agents and employees, through its deliberate indifference to the truth or falsity of statements contained in the publications, intended that the Plaintiff posed danger to the health and/or safety of any individual or to the orderly operation of SMC.

a. That SMC, their agents and employees, through its deliberate or reckless indifference to the truth or falsity of statements contained in the publications, submitted that the act Plaintiff was accused of was "a crime."

171.    Patients and the public at large reasonably and justifiably relied on the falsity and fraudulent conduct of SMC, which subjected Plaintiff to public scorn and humiliation.

172.    That the aforementioned actions and/or conducts of defendants, their agents and/or employees were wanton, willful and/or with reckless disregard for the truth.

173.    WHEREFORE, Plaintiff demands judgment against Defendants as follows: (i) compensatory damages; (ii) punitive damages in an amount of five (5) times compensatory damages, pursuant to the Punitive Damage Act; (iii) reimbursement of reasonable attorneys fees and costs of suit; (iv) any other relief the Court deems just and proper.

**COUNT 11**

174.    Plaintiff repeats and reincorporates each allegation heretofore alleged.

175.    That each of the defendant(s), its agents and/or employees were unjustly enriched by the false statements mentioned herein.

176.    That plaintiff suffered financial loss as a result of the above conducts.

177.    WHEREFORE, Plaintiff demands judgment against Defendants as follows: (i) compensatory damages; (ii)

punitive damages in an amount of five (5) times compensatory damages, pursuant to the Punitive Damage Act; (iii) reimbursement of reasonable attorneys fees and costs of suit; (iv) any other relief the Court deems just and proper.

## COUNT 12

178.     Plaintiff repeats and re-incorporates each allegation heretofore alleged.

179.     That Defendants' remittance of false statements to patients and the public at large, constituted an unconscionable commercial practice, fraud, false pretense, false promise, misrepresentation and/or deception in violation of the Consumer Fraud Act (N.J.S.A. 56:8-2).

180.     That as a result of defendant's commission of act constituting a violation of the Consumer Fraud Act, plaintiff suffered an ascertainable loss in an amount to be determined.

181.     WHEREFORE, Plaintiff demands judgment against Defendants as follows: (i) Compensatory damages; (ii) mandatory treble damages; (iii) mandatory reasonable attorneys' fees and costs pursuant to the Consumer Fraud Act; (iv) any other relief the Court deems just and proper.

## COUNT 13

## Defamation

182. Plaintiff repeats here the allegations of the previous paragraphs as if set forth at length herein.


183. Since September 30, 2015 to present, the actions of the Defendants as set forth above including the issuance and publication of false statements regarding Dr. Gabros and his practice, and which are on-going and continue up to and including the present, are defamatory in nature and have harmed and continue to harm the plaintiff, thus entitling the plaintiff to damages.

184. Defendants defamed plaintiff in the New Jersey Board of Medical Examiners and/or the National Practitioner Data Bank ("NPDB") stating Dr. Gabros committed a crime.

185. National Practitioner Data Bank is a confidential information clearinghouse created by Congress with primary goals of protecting the public, among other things.

186. Defendants communicated to persons other than the plaintiff a false and defamatory statement of fact regarding the plaintiff with actual knowledge that the statement was false, thereby causing serious damages to plaintiff's reputation.

WHEREFORE, plaintiff demands judgment against Defendants as
  follows:

a)     Compensatory Damages for *Slander Per Se*- General Damages: where Defendants' words are slanderous in themselves without proof of actual damages as they charge criminal conduct;

b)     Compensatory Damages for economic losses suffered by plaintiff as the proximate result of the injury to plaintiff's reputation;

c)     Compensatory Damages- Emotional Suffering due to injury to plaintiff's reputation; and

d)     Punitive Damages as Boothby acted with ill-will, wrongful intent, personal hostility and an actual desire to hurt the plaintiff without any reasonable grounds to believe in the truth of the libelous statement.

## COUNT 14

187. Plaintiff repeats here the allegations of the previous paragraphs as if set forth at length herein.

188. Defendant SMC, as recipients of federal funds, discriminated against plaintiff on the basis of his race, color, and/or ethnicity in violation of 42 U.S.C. § 2000d et seq.

**RESPONDEAT SUPERIOR**

189. At the time of the incident, Defendants Scott Strenger, M.D., Jeanne Rowe, M.D., and Peter Jungblut, M.D. were employees, agents, and/or servants of Defendant City of Atlantic City.  Defendants Scott Strenger, M.D., Jeanne Rowe, M.D., and Peter Jungblut, M.D. were acting within the course and scope of their employment with said Defendant at the time of the incident made the basis of this lawsuit.  As such, said Defendant is

responsible for the conduct of Defendants Scott Strenger, M.D., Jeanne Rowe, M.D., and Peter Jungblut, M.D. under the doctrine of **respondeat superior** due to the master-servant relationship which existed at the time of the incident made the basis of this lawsuit.

### (Damages and Prayer for Relief)

190. Plaintiff repeats here the allegations of the previous paragraphs as if set forth at length herein.

191. As a result of the actions of the Defendants, jointly, severally, and in the alternative, Plaintiff Dr. Gabros has suffered and will continue to suffer damages.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor against all Defendants, jointly, severally, and in the alternative, as follows:

A.   Voiding the illegal determination of SMC and the MEC and Linwood Care Center, which affirmed the suspension and removed Plaintiff from the SMC staff.

B.   Adjudging the denial of Plaintiff's clinical privileges as being discriminatory and in violation of Plaintiff's constitutional rights (in part) Plaintiff's Constitutional Rights and contractual right to due process.

C.   Adjudging that relevant provisions of the Bylaws, as originally applied and/or as amended are illegal, unconstitutional and/or unenforceable;

D.   Enjoining SMC and Linwood Care Center from enforcing any determination or decision that purports to require SMC to suspend, restrict, and/or terminate Dr. Gabros's staff privileges or otherwise suspend and remove him from the SMC medical staff.

E.   Enjoining the Defendants from engaging in the exclusionary conduct as set forth herein;

F.   Enjoining Defendants from dishonoring any and all legitimate provisions of the Bylaws which they are required to honor;

G.   Enjoining Defendants from making false and misleading statements about Dr. Gabros and his medical services and/or otherwise defaming him;

H.   Enjoining Defendants from interfering with Dr. Gabros' business expectancy;

I.   Awarding Plaintiff compensatory damages against each of the Defendants and against them jointly and severally;

J.   Awarding Plaintiff punitive damages against each of the Defendants and against them jointly and severally;

K.   Awarding Plaintiff attorney fees pursuant to NJLAD, 42 U.S.C 1988 and other applicable statutes mentioned herein, costs of suit, and expenses;

L.   Awarding Plaintiff exemplary damages;

M.   Awarding Plaintiff treble damages per New Jersey and federal statutes made and provided;

N.   Awarding Plaintiff pre-judgment and post-judgment interest as provided by statute and court rule;

O.   Granting Plaintiff any such other and further relief as may be just and appropriate.

## COUNT 15
## (Breach of Contract by Genesis Healthcare d/b/a Linwood Care Center)

192. Plaintiff repeats here the allegations of the previous paragraphs as if set forth at length herein.

193. Defendant Linwood Care Center (LCC) and Plaintiff have a written contract under applicable New Jersey law.

194. Dr. Gabros has been on the medical staff at LCC at all relevant times and was a party the Bylaws (contract) with Defendant LLC.

195. Plaintiff fully performed all of his obligations under the Bylaws and did not breach the Bylaws in any material way.

denial of access to the Linwood Care Center facility and preventing Plaintiff Dr. Gabros access to his patients

196. Defendants materially, willfully, and fundamentally breached their contractual obligations under the Bylaws by failing to adhere to the Bylaws for, *inter alia*, fair hearings, summary suspensions, participation of interested parties, appeals, and investigations of Dr. Gabros.

197. LCC's fraudulent, willful, and illegal *per se* failure to provide Dr. Gabros's physician privileges with his current patients and LCC denied him his rights under the Bylaws to obtain patients and care for those patients, nonetheless the harm Plaintiff suffered to his reputation and standing in the community.

198. Defendants' summary suspension denied Plaintiff his rights under the Bylaws to care for his patients.

199. Defendants imposed penalties that were unjustified and unsupported, and were far harsher than what may have been appropriate or justified.  In so doing, Defendants violated their implied covenant of good faith and fair dealing under New Jersey common law for a contract, and expressly violated the plain language of the contract.

200. Defendants are obligated to honor the Bylaws in full, and the Bylaws vest Plaintiff with enforceable rights with respect to a breach by LCC and/or the other Defendants.

201. As described above, the actions of the Defendants were contrary to the Bylaws, and breached the Bylaws.

202. Defendants' actions proximately caused injury in the form of lost revenue and harm to Plaintiff in an amount to be determined at the time of trial.

**WHEREFORE**, Plaintiff demands judgment against Defendant for:

      a. Compensatory damages;

      b. Interest;

      c. Costs of suit;

      d. Attorneys' fees; and

      e. Such other and further relief as the Court shall deem fair and equitable.

## COUNT 16

### (Breach of Implied Covenant of Good Faith and Fair Dealings)

203. Plaintiff re-alleges each and every paragraph contained in this Complaint as if set forth in detail herein.

204. Defendant is bound by the covenant of good faith and fair dealing implied by law in the Agreements.

205. By virtue of the aforementioned conduct, including, but not limited to, Defendant's wrongful and intentional denial of access to the Linwood Care Center facility and preventing Plaintiff Dr. Gabros access to his patients, Defendant has breached and continues to breach the implied covenant of good faith and fair dealing.

206. As a direct and proximate cause of Defendant's breach of the implied covenant of good faith and fair dealing, Plaintiff has and continues to suffer damages.

**WHEREFORE,** Plaintiff demands judgment against Defendant for:

    f. Compensatory damages;

    g. Interest;

    h. Costs of suit;

    i. Attorneys' fees; and

    j. Such other and further relief as the Court shall deem fair and equitable.

### COUNT 17

207. Plaintiff re-alleges each and every paragraph contained in this Complaint as if set forth in detail herein.

208. Defendant is bound by the obligations imposed by the Agreements in this matter.

223. As detailed herein, Defendant has breached and continues to breach the Agreements.

224. As a direct and proximate cause of Defendant's breach of contract, Plaintiff has and continues to suffer damages.

**WHEREFORE,** Plaintiff demands judgment against Defendant for:

a. Compensatory damages;

b. Interest;

c. Costs of suit;

d. Attorneys' fees; and

e. Such other and further relief as the Court shall deem fair and equitable.

## COUNT 19
### (Tortious Interference with Business Relations and Prospective Economic Advantage)

225. Plaintiff repeats here the allegations of the previous paragraphs as if set forth at length herein.

226. Defendant Linwood tortuously interfered with Plaintiff's business relations and prospective economic advantage without excuse or justification but for the intent to harm Plaintiff.

227. Defendants' conduct resulted from actual malice and/or wanton and reckless disregard of Plaintiff's rights.

228. As result of Defendants' conduct in interfering with Plaintiff's business as aforestated, Plaintiff's income is reduced thereby.

229. As a direct and proximate result of Defendants' conduct, Plaintiff was injured and suffered damages.

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment in his favor against all Defendants, jointly, severally, and in the alternative, as follows:

a. Voiding the illegal determination of Linwood Care Center, which affirmed the suspension and removed Plaintiff from the SMC staff.

b. Adjudging the denial of Plaintiff's clinical privileges as being discriminatory and in violation of Plaintiff's constitutional rights (in part) Plaintiff's Constitutional Rights and contractual right to due process.

c. Adjudging that relevant provisions of the Bylaws, as originally applied and/or as amended are illegal, unconstitutional and/or unenforceable;

d. Enjoining Linwood Care Center from enforcing any determination or decision that purports to require LCC to suspend, restrict, and/or terminate Dr. Gabros's staff privileges or otherwise suspend and remove him from the SMC medical staff.

e. Enjoining the Defendants from engaging in the exclusionary conduct as set forth herein;

f. Enjoining Defendants from dishonoring any and all legitimate provisions of the Bylaws which they are required to honor;

g. Enjoining Defendants from making false and misleading statements about Dr. Gabros and his medical services and/or otherwise defaming him;

h. Enjoining Defendants from interfering with Dr. Gabros' business expectancy;

i. Awarding Plaintiff compensatory damages against each of the Defendants and against them jointly and severally;

j. Awarding Plaintiff punitive damages against each of the Defendants and against them jointly and severally;

k. Awarding Plaintiff attorney fees and other applicable statutes mentioned herein, costs of suit, and expenses;

l. Awarding Plaintiff pre-judgment and post-judgment interest as provided by statute and court rule;

m. Granting Plaintiff any such other and further relief as may be just and appropriate.

McILWAIN, LLC
Attorneys for Plaintiff,
David E. Gabros, M.D.,


BY:___/S/ Timothy J. McIlwain_____
        TIMOTHY J. MCILWAIN

Dated: October 14, 2016

## **DEMAND FOR JURY TRIAL**

Plaintiff respectfully requests a trial by jury, pursuant to Fed. R. Civ. P. 38(b), on all issues.


McILWAIN, LLC
Attorneys for Plaintiff,
David E. Gabros, M.D.


BY:  /s/ Timothy J. McIlwain_____
        TIMOTHY J. MCILWAIN

Dated:  October 14, 2016


## ***CERTIFICATION PURSUANT TO RULE 4:5-1***

The undersigned, Timothy J. McIlwain, Esquire certifies on behalf of the above named plaintiff as follows:

**1.**     **I am an attorney admitted to practice law in the State of New Jersey, and have been entrusted with the handling of this matter for the above named plaintiff;**

2.     The matter in controversy is not the subject of any other action pending in any Court or of a pending arbitration proceeding, nor is any other action or arbitration proceeding contemplated.

3.     At this time, there are no other parties who should be joined in this action;

4.     I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.


Dated:     ___10/14/16___                          By:    __/s/   Timothy
J. McIlwain_____
                                                      Timothy J. McIlwain, Esquire