```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| DAVID E. GABROS, | 1:16-6135-NLH-JS |
| Plaintiff, | **OPINION** |
| v. | |
| SHORE MEDICAL CENTER, | |
| Defendant. | |

APPEARANCES:

TIMOTHY J. MCILWAIN
MCILWAIN, LLC
MCILWAIN PROFESSIONAL BUILDING
2020 NEW ROAD, SUITE A
LINWOOD, NJ 08221
    *Attorney for Plaintiff David E. Gabros, M.D.*

KEVIN J. THORNTON
COOPER LEVENSON, P.A.
1125 ATLANTIC AVENUE
ATLANTIC CITY, NJ 08401
    *Attorney for Defendant Shore Medical Center.*

**HILLMAN**, **District Judge**

Presently before the Court is Plaintiff's motion for oral argument, and two joint motions to seal certain docket entries and the Court's June 28, 2019 Opinion.  For the reasons stated below, the Court will deny the Parties' motion for oral argument as moot.  The Court will deny the Parties' joint motions to seal.

**BACKGROUND**

This case concerns the rescinding of privileges for Plaintiff David E. Gabros, M.D., a physician at a New Jersey hospital. The facts of this case have been summarized by this Court in previous rulings.[1] Plaintiff filed a complaint against Defendant Shore Medical Center ("SMC") in March 2014. This case was dismissed in September 2016 without prejudice because Plaintiff failed to properly serve the individuals named in that matter.

---

[1] In short, Plaintiff is an internal medicine physician who held staff privileges medicine at Shore Medical Center ("SMC") from 1999 to 2013. In 2009, 2010, and 2012, Plaintiff failed to meet his obligations under SMC's bylaws for three reasons: (1) visiting patients after established hours; (2) taking illegible notes on patient charts; and (3) being unreachable by telephone in the event of a patient emergency.

When Plaintiff sought a status change in February 2013, he was informed that instead of being moved to SMC's active staff, he was to be moved to referral status, meaning he had no clinical privileges and could not admit or provide care for patients. Shortly after this announcement was made, Plaintiff was accused of slashing a colleague's tires and received a precautionary suspension. Though Plaintiff was prohibited from entering SMC's campus, he attempted to return to SMC and was stopped by security. Plaintiff was charged with "Criminal Mischief." These charges were voluntarily dismissed.

Plaintiff's conduct was reported to the relevant health care entities. A number of hearings and panels were convened regarding Plaintiff's suspension privileges. Plaintiff then filed a complaint alleging violations of the Sherman Act, violations of Plaintiff's civil rights, and violations of the New Jersey Law Against Discrimination.

Plaintiff appealed this ruling to the Third Circuit. This Court's ruling was affirmed in February 2018. In September 2016, while Plaintiff's appeal was pending, Plaintiff filed another complaint against SMC, Scott Strenger, M.D., Jeanne Rowe, M.D., and Peter Jungblut, M.D. In October 2016, Plaintiff filed his First Amended Complaint, adding Defendant Genesis Healthcare d/b/a/ Linwood Care Center. SMC answered on February 2017. In July 2017, Plaintiff and SMC stipulated to the dismissal of Defendants Strenger, Row, and Jungblut. Discovery and motion practice ensued.

In August 2018, Defendant filed its First Motion for Summary Judgment. The Court rejected this motion for being overlength. Defendant then filed a Second Motion for Summary Judgment. In September 2018, Plaintiff filed a Motion to Strike Defendant's Motion for Summary Judgment. On March 20, 2019, the Parties jointly filed a motion requesting oral argument.

The Court ruled on Plaintiff's Motion to Strike, Defendant's Motion for Summary Judgment, and the Parties' Motion for Oral argument on June 28, 2019. At that time, the Court also ordered that docket entries 86-33 and 124-1 be placed under temporary seal. The Court ordered that the Parties file a joint motion pursuant to Local Rule of Civil Procedure 5.3 addressing whether the Court's Opinion and docket entries should permanently sealed. The Parties filed two motions to seal on

December 9, 2019.  This matter has been fully briefed and is ripe for adjudication.

## ANALYSIS

A. Subject Matter Jurisdiction

This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1367.

B. Motion to Seal Standard

It is well-established that there is a "common law public right of access to judicial proceedings on records." In re Cendant Corp., 260 F.3d 183, 192 (3d Cir.) (citation omitted). Ordinarily, documents filed with the Court or utilized in connection with judicial proceedings are part of the public record with a presumptive right of public access.  Leucadta v. Applied Extrusion Tech., Inc., 998 F.2d 157, 164 (3d Cir. 1993). In some instances, "the strong common law presumption of access must be balanced against the factors militating against access". Id. at 165.  When a party files a motion to seal, that party must demonstrate that good cause exists for protection of the material at issue.  Securimetrics, Inc. v. Iridian Techs., Inc., 2006 WL 827889, at *2 (D.N.J. Mar. 30, 2006).  A party demonstrates good cause by making a "particularized showing that disclosure will cause a 'clearly defined and serious injury to the party seeking closure.'"  Id. (quoting Pansy v. Borough of Stroudsburg, 23 F.3d 772, 786 (3d Cir. 1994)).

4

In this District, Local Civil Rule 5.3 governs motions to seal or otherwise restrict public access to materials filed with the Court and in judicial proceedings. To place a docket entry under seal, the Rule requires that the motion to seal must be publicly filed and describe: "(a) the nature of the materials or proceedings at issue, (b) the legitimate private or public interests which warrant the relief sought, (c) the clearly defined and serious injury that would result if the relief sought is not granted, and (d) why a less restrictive alternative to the relief sought is not available." L.Civ.R. 5.3(c)(2). The party moving to seal must submit a proposed order that contains proposed findings of fact and conclusions of law. L.Civ.R. 5.3(c)(3).

C. Joint Motions to Seal

With the standard set out above in mind, the Court will now turn to the parties' joint motions to seal.

1. NPDB Report

The Parties seek to seal docket entry 142, a report by the National Practitioner Data Bank ("NPDB"), submitted by Defendant Shore Medical Center on June 18, 2015. This report was a result of the final adverse action taken by SMC to revoke Plaintiff's clinical privileges.

In 1986, Congress passed the Health Care Quality Improvement Act of 1986 ("HCQIA"), 42 U.S.C. § 11101, et seq.

5

The HCQIA requires that certain information regarding malpractice payments, sanctions, and professional review actions taken with respect to medical professionals be reported to the federal government. 42 U.S.C. § 11131-7. The regulations promulgated pursuant to the HCQIA established the National Practitioner Data Bank to collect and organize information collected under the HCQIA.

The NPDB operates as a centralized clearinghouse for state licensing boards, hospitals, and other health care entities to obtain relevant background information about physicians. Hospitals are required to request information from the NPDB with respect to each physician or health care practitioner who applies for staff membership or clinical privileges. 42 U.S.C. § 11135. The NPDB makes the information it collects available to "State licensing boards, to hospitals, and to other health care entities (including health maintenance organizations) that have entered (or may be entering) in an employment or affiliation relationship with the physician or practitioner or to which the physician or practitioner has applied for clinical privileges or appointment to the medical staff." 42 U.S.C. § 11137(a).

Section 11137 also outlines the confidentiality provisions applicable to the information collected under the HCQIA. Specifically, it mandates:

> Information reported under this subchapter is considered confidential and shall not be disclosed (other than to the physician or practitioner involved) except with respect to professional review activity . . . or in accordance with regulations of the Secretary promulgated pursuant to subsection (a) of this section. *Nothing in this subsection shall prevent the disclosure of such information by a party which is otherwise authorized, under applicable State law, to make such disclosure.* Information reported under this subchapter that is in a form that does not permit the identification of any particular health care entity, physician, other health care practitioner, or patient shall not be considered confidential.

42 U.S.C. § 11137(b)(1) (emphasis added).

As such, unless otherwise provided by state law, all information collected by the NPDB and "reported under this subchapter" is presumed confidential and is only released as specifically mandated by the HCQIA. See Medical Soc. of New Jersey v. Mottola, 320 F.Supp.2d 254, 259 (D.N.J. 2004).

The Parties contend that federal law prohibits disclosure of National Practitioner Data Bank reports. The Parties highlight that the purpose of the NPDB and its reports is to improve health care quality, protect the public, and reduce health care fraud and abuse in the United States. According to the Parties, if NPDB reports were available to the public, reporting entities would lose confidence in the NPDB's confidentiality protections. The Parties argue that this lack of confidence would lead to a decline in voluntary or optional reports regarding problematic officials and would ultimately

7

hinder the reliability and effectiveness of the NPDB in serving its public policy goals.

The Court has closely reviewed the documents the parties ask the Court to seal and does not find a legitimate private or public interest warranting sealing, nor a serious injury that would result from a failure to seal.  While there is no doubt a generalized public benefit from a confidential reporting system allowing medical employers to share information about the qualifications of licensed medical professionals, that interest must fall away when those reports are themselves evidence in a matter pending in federal court or any court.  The alternative is that medical employers and professionals may generate false or truthful information about each other material to their dispute and the potential claims of injured third parties under a regime where that information never sees the light of day.

It is hard to imagine how that benefits the public at large and begs the question why a federal court should aid in such secrecy absent clear statutory direction.  What the parties really envision is a system that always shields the airing of claims of incompetency and malfeasance by medical professionals and the medical institutions that hire them.  This lack of transparency and absolute immunity is as likely to cause false reports as it is to foster candor.

Nor does the relevant statute create such an absolute private world immune from outside scrutiny. It is one thing to say that information should be confidential between the parties for regulatory purposes and quite another to say that information can never be revealed when disputes arise over the content of such reports. The only law cited by the parties actually authorizes disclosure for purposes of litigation when the system breaks down as envisioned. See 45 C.F.R. 60.18(a)(1)(v) (allowing use of NPDB reports in medical malpractice litigation where hospital failed to request information from the NPDB).

Moreover, there can be no better example of the overbreadth of the parties' argument for sealing than this case. Plaintiff's case hinges on allegations that NPDB reports about him were false and he demands a jury trial. See ECF No. 1, ¶ 7.a. Plaintiff would have his allegations litigated in a star chamber with a jury of ordinary citizens presumably barred from discussing the case after their service in a closed courtroom. There is no precedent for such a proceeding in federal court except in those rare cases which might involve classified information or national secrets and even in those cases redactions and sanitized versions allow for public access.

In sum, the Court is unpersuaded by the parties' arguments that denying their motion to seal the NPDB reports will have a

9

chilling effect on reporting.  Moreover, there is nothing in binding case law or the relevant statute itself expressly forbidding disclosure of these reports in the context of the claims brought by this Plaintiff.  Moreover, and perhaps most importantly, this Court has repeatedly emphasized the public interest in the disclosure of materials filed on this Court's docket, which often outweighs private interests in confidentiality.

This Court is funded by the public and does not sit, in general, to resolve private disputes in secret.  Finding that the parties lack a legitimate justification to warrant sealing the identified information, the Court will deny the parties' joint motion to seal with regard to the NPDB reports.

2. June 28, 2019 Opinion and Other Documents

The Parties also seek to seal several docket entries, including: (a) docket entry 86-33, a National Practitioner Data Bank report from August 9, 2013; (b) portions of docket entries 124-1, 92-30, and 92-33, referred to collectively as "DCA Reports"; and (c) docket entry 130, the Court's June 28, 2019 Opinion.  As stated above, the Court previously placed docket entries 86-33 and 124-1 under temporary seal and ordered the Parties to file a joint motion pursuant to Local Rule 5.3.  The Court will assess the Parties' motion to seal with respect to these entries in turn.

10

a. NPDB Reports

Docket entry 86-33 is a NPDB report submitted by Defendant SMC on August 9, 2013, concerning Plaintiff's summary suspension of clinical privileges from SMC. The Parties repeat their arguments for sealing docket entry 142 discussed above.

For the same reasons discussed above, the Court will deny the Parties' joint motion to seal docket entry 86-33.

b. DCA Reports

Docket entry 124 contains various NPDB reports and information related to the dissemination of the reports as well as information related to the New Jersey Health Care Professional Responsibility and Reporting Enhancement Act. Docket entries 92-30 and 92-33 also contain DCA reports that the Parties request be placed under permanent seal.

In the words of the New Jersey Division of Consumer Affairs ("DCA"), the purpose of the New Jersey Health Care Professional Responsibility and Reporting Enhancement Act is to "strengthen patient protections by assuring that the health care professionals who have demonstrated impairment or incompetence or engaged in professional misconduct become known to their licensing boards." 42 N.J.R. 2577(a). As such, this Act grants health care entities the ability to request DCA forms submitted by other health care entities for the purpose of evaluating a health care professional for hiring, continued employment, or

continued privileges.  See N.J.A.C. 13:45E-6.1.  According to the Parties, these forms are "not considered government records under the Open Public Records Act" and the DCA regulations do not contemplate that any portion of a report would be publicly available.  N.J.A.C. 13:45-5.1(b).

The Parties argue that similar to the NPDB reports, permitting DCA forms and reports to be available to the public would chill health care entities' willingness to provide information.  The Parties further assert that allowing these forms to be publicly available is inconsistent with New Jersey's Health Care Professional Responsibility and Reporting Enhancement Act.

As with the NPDB reports, the Court is unpersuaded that denying the joint motion to seal will result in a serious chilling effect on health care entities' willingness to participate in reporting and providing information.  Again, the parties have not pointed to case law or a statute that expressly forbids disclosure of these reports.  In the absence of case law or a statute expressly forbidding disclosure of these reports, the Court will again decline to seal these documents.

Because the parties have failed to meet the standard set by Local Rule of Civil Procedure 5.3, the Court will deny the joint motion to seal docket entry 124.

### c. The Court's June 2019 Opinion

In the course of this case, Defendant filed a Second Motion for Summary Judgment on August 31, 2018. The Court ruled on this issue in an Opinion dated June 28, 2019.

The Parties argue that because the Court's Opinion "recites the content of the NPDB and DCA Reports verbatim," allowing public access to this opinion is "tantamount to allowing the public to review the reports themselves." ECF No. 155-5 at 7.

Having reviewed the Court's June 2019 Opinion, the Court notes that this Opinion does not contain any personally identifiable information or sensitive information that would justify granting the parties' joint motion to seal. And as the Court has noted, that the Opinion recites certain content from the NPDB and DCA is an insufficient reason to seal it. Finally, while this Court's decisions are binding on no one except the parties, the development of the federal case law requires that the reasoning of the Court in interpreting statutes be widely available to be considered by sister courts as persuasive authority or not. The Court's 52-page opinion discusses the statute of limitations for defamation claims arising from NPDB reports, the scope of immunity under the HCQIA, and the reach of analogous claims under state statutory law. The development of the law would be stymied if Courts issue secret rulings known only to the parties. In short, because the Court does not make

13

its decisions in secret, the Court finds it is in the public interest to allow the June 2019 Opinion containing the resolution of certain issues in this case to made public.

Because the parties have failed to meet the standard set by Local Rule of Civil Procedure 5.3, the Court will deny the joint motion to seal docket entry 130.

## **CONCLUSION**

For the reasons stated above, the Court will deny the Parties' joint motions to seal. An appropriate Order will be entered.


Date: <u>October 13, 2020</u>    s/ Noel L. Hillman
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.

14